UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE HILSINGER COMPANY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-10594-IT |
| | * | |
| EYEEGO, LLC, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

February 26, 2016

TALWANI, D.J.

I.   Introduction

Before the court is OptiSource International, Inc.'s ("OptiSource") Motion to Intervene [#100] in the instant action. For the reasons set forth below, the court DENIES the motion to intervene.

II.   Background

OptiSource entered into a Patent License Agreement with Eyeego, LLC ("Eyeego") on December 23, 2012. Optisource's [Redacted] Mem. Supp. OptiSource's Mot. Intervene ("Intervention Mem.") [#107] at 1; Ex. A, Decl. Thomas P. McNulty Supp. OptiSource's Mot. Intervene ("License Agreement" or "Agreement") [#108-1]; see also The Hilsinger Company's Opp'n OptiSource's Mot. Intervene ("Opp'n") [#160] at 1. The Agreement granted an exclusive license to OptiSource to "make, have made, use, sell, offer to sell and import Licensed Products" under the Patents-in-Suit. Intervention Mem. at 1; License Agreement § 2.a.

In March 2013, The Hilsinger Company ("Hilco") brought suit against Eyeego for declaratory judgment on two counts: that Hilco was not infringing upon U.S. Patent No.

8,070,403 (the "'403 Patent") owned by Eyeego ("Count I"), and that the '403 patent was invalid ("Count II"). See Compl. [#1]. Hilco later amended its Complaint to include two additional counts for declaratory judgment: that Hilco was not infringing upon U.S. Patent No. 8,375,546 (the "'546 patent," collectively with the '403 patent, "the Patents-in-Suit") owned by Eyeego ("Count III"), and that the '546 patent was invalid ("Count IV"). See Am. Compl. [#8]. Eyeego, in its Answer, brought counterclaims against Hilco for: infringing the '403 patent ("Counterclaim I"), and infringing the '546 patent ("Counterclaim II," collectively with Counterclaim I "the Counterclaims"). Answer [#4].

On October 14, 2014, Eyeego moved for Summary Judgment against Hilco with respect to Count I and Counterclaim I: Infringement of the '403 Patent. See Eyeego's Mot. Summ. J. Infringement '403 Patent [#78]. Hilco moved to deny or defer Eyeego's motion for summary judgment on November 19, 2014. See Pl./Countercl.-Def. Hilco's Rule 56(d) Mot. Den. Defer Eyeego's Mot. Partial Summ. J. ("56(d) Mot.") [#81]. In its memorandum in support of that motion, Hilco suggested that Eyeego may lack standing to bring an infringement suit against Hilco, in part because Eyeego may have transferred "all substantial rights" under the '403 Patent to OptiSource. Mem. Law Supp. Pl./Countercl.-Def. Hilco's Rule 56(d) Mot. Den. Defer Eyeego's Mot. Partial Summ. J. ("56(d) Mem.") [#82] at 13-16. OptiSource made clear its intention to intervene less than a month later. See OptiSource's Mot. Leave File Mot. Intervene Under Seal [#85]. OptiSource filed its motion to intervene on July 22, 2014. Mot. Intervene [#100]. Hilco opposes OptiSource's intervention. See Hilco's Mot. Seal Opp'n to OptiSource's Mot. Intervene [#112]; Opp'n.

III.   Discussion

    *A.*   *Legal Standard*

Rule 24 of the Federal Rules of Civil Procedure allows third parties to intervene in a pending action either as of right, Fed. R. Civ. P. 24(a), or with the court's permission, Fed. R. Civ. P. 24(b).  For a third party to intervene as of right under Rule 24(a), it must establish: "(i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party."  R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009).[1]  Putative intervenors must meet each condition.  Id.

The standard for permissive intervention under Rule 24(b) is less strict than for intervention as of right.  To qualify for permissive intervention, a putative intervenor must: (1) make a timely motion to intervene; and (2) allege a claim or defense that "ha[s] a question of law or fact in common" with the "main action."  Fiandaca v. Cunningham, 827 F.2d 825, 832-33 (1st Cir. 1987) (quoting Fed. R. Civ. P. 24(b)).  When this "threshold requirement" is met, the court "can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion."  Daggett v. Comm'n on Gov'tal Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999).

When determining whether a motion to intervene is timely, courts should consider four factors: "(i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing

---

[1] Although this is a patent suit, motions to intervene are "not unique to patent law" and therefore First Circuit law controls. See Ericsson, Inc. v. InterDigital Commc'ns Corp., 418 F.3d 1217, 1220-21 (Fed. Cir. 2005).

parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention." Id. (citing Banco Popular de P.R. v. Greenblatt, 964 F.2d 1227, 1231 (1st Cir. 1992)). The timeliness inquiry is "fact-sensitive," relies on the "totality of the circumstances," should consider the status of the case at the time of intervention, and use a more searching scrutiny in later stages of the case. Id. (citing Greenblatt, 964 F.2d at 1230-31); see also R & G Mortg. Corp., 584 F.3d at 10-11 ("[W]hen a putative intervenor seeks both intervention as of right and permissive intervention, a finding of untimeliness with respect to the former normally applies to the latter . . . .").

Rule 24 requires further that the motion for leave to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

*B.   Analysis*

OptiSource's proposed counterclaims allege that OptiSource is the exclusive licensee of the '403 Patent and the '546 Patent, that Hilco has infringed these patents, and that OptiSource has suffered damages as a result of Hilco's infringing conduct. OptiSource's Proposed Countercl. [#108-5]. OptiSource seeks to intervene to bring these counterclaims as a matter of right, arguing that (1) the motion is timely; (2) it has interests under the Patents-in-Suit, via the License Agreement; (3) its interests in the Patents-in-Suit would be affected by a finding of non-infringement or invalidity in this case; and (4) Eyeego's interests are not perfectly aligned with OptiSource's and thus Eyeego cannot adequately protect OptiSource's interests. Intervention Mem. at 1-3, 9-11. Alternatively, OptiSource seeks to intervene in the suit permissively. Id.

OptiSource cannot intervene as of right to bring these counterclaims because its motion is

untimely: too much time passed after OptiSource knew or should have known of both Hilco's alleged infringement and the pending litigation, and Hilco would be prejudiced by OptiSource's late intervention claiming infringement. See R & G Mortg. Corp., 584 F.3d at 7 (listing the factors for courts to consider when determining a motion to intervene's timeliness). OptiSource and Eyeego entered into the License Agreement in December 2012 that referenced the anticipated litigation, and OptiSource received at least monthly updates regarding the status of this suit once the action was filed in 2013 and thereafter. License Agreement; Dep. Daryl Squicciarini, Ex. B, Opp'n [#160-2] at 99:6-100:7. Therefore, OptiSource knew of the alleged infringement before the action was filed, and of Eyeego's Counterclaims, at the latest, within a month of March 2013, when Eyeego first filed its Counterclaims. See Answer [#4]. Although OptiSource claims that it moved to intervene promptly after Hilco suggested that *Eyeego* may lack standing to bring a counterclaim, OptiSource was aware throughout the litigation that OptiSource was the Exclusive Licensee under the December 2012 License Agreement. See Intervention Mem. at 5-6, 11; License Agreement §2.a. That Hilco subsequently uncovered that fact during discovery and raised the standing issue in a court filing does not provide grounds for OptiSource's late intervention.

Intervention to allow OptiSource to bring a counterclaim would prejudice Hilco. See R & G Mortg. Corp., 584 F.3d at 7 (prejudice against existing parties is a factor to consider for timeliness); Fiandaca, 827 F.2d at 834 ("The issue of prejudice to the existing litigants . . . is perhaps the most important [in the timeliness analysis]."). Discovery is currently closed and although OptiSource participated in discovery, it only participated as a third party. See Opp'n at 10. Allowing OptiSource to intervene to seek its own lost profits damages would prejudice Hilco because it would necessitate reopening of discovery so that Hilco could conduct discovery

against OptiSource on the issue of lost profits. See id.

OptiSource also overstates any prejudice from the denial of intervention with respect to its counterclaims. OptiSource cites the significant expenses it has incurred as a third party participant in discovery. Intervention Mem. at 8. However, OptiSource had other ways to seek to recover its costs. Hilco sought discovery from OptiSource under Federal Rule of Civil Procedure 45. See Opp'n at 12. Had OptiSource objected to the costs associated with complying with Hilco's discovery request, it could have moved the court to quash the subpoena as unduly burdensome, but it did not do so. See Fed. R. Civ. P. 45(b)(2)(B), (b)(3)(A)(iv). Furthermore, OptiSource could seek compensation from Eyeego. See License Agreement § 14.a ("In the event OptiSource is not a party plaintiff in such a lawsuit, OptiSource agrees, at the request of Eyeego, and *at the expense of Eyeego*, to do all things as may be reasonably required to assist Eyeego in its action against Hilco.") (emphasis added).

Furthermore, no other factors weigh in favor of late intervention. OptiSource argues that Eyeego cannot adequately protect OptiSource's interests because Eyeego cannot bring an infringement action for OptiSource's lost profits. See Intervention Mem. at 11 ("OptiSource is the only party capable of seeking its lost profits as damages."). OptiSource can, however, file a separate suit for infringement.

OptiSource also asserts that it has defenses related to the Patents-in-Suit and that it will be prejudiced because its interests would be affected by a finding of non-infringement or invalidity in this case. Notably, however, its proposed pleading does not include a proposed Answer to Hilco's Amended Complaint as required by Federal Rule of Civil Procedure 15, underscoring that Eyeego is adequately defending OptiSource's interests and that OptiSource seeks to raise no additional defenses. See R & G Mortg. Corp., 584 F.3d at 7 (inadequacy of

representation is a requirement for intervention as of right); B Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 544-46 (1st Cir. 2006) (explaining that when the putative intervenor and a named party have matching "ultimate objectives," "a rebuttable presumption of adequate representation applies").

With regards to defending claims of the invalidity of the Patents-in-Suit and Hilco's non-infringement, Eyeego and OptiSource have perfectly aligned interests: both seek to affirm the validity of the Patents-in-Suit and Hilco's infringement of the Patents-in-Suit. Answer First Am. Compl. [#11] ¶¶ 36, 38, 40, 42 (denying that Hilco did not infringe on the Patents-in-Suit and denying that the Patents-in-Suit are invalid); Intervention Mem. at 9 ("OptiSource has a significant and direct interest in the validity and enforcement of the Patents-in-Suit."). OptiSource and Eyeego are even represented by the same counsel. If the court dismisses the infringement counts on standing grounds due to OptiSource's status as the exclusive licensee, the concern for which OptiSource bases its motivation for intervention, OptiSource would suffer no harm: OptiSource would be free to bring its own action for infringement. If the invalidity or infringement counts are instead addressed on their merits or dismissed on other grounds, OptiSource would be in the exact same position as before it moved for intervention.

Based on the weighing of these factors, OptiSource's motion to intervene is denied.

IV.     Conclusion

For the foregoing reasons, OptiSource's Motion to Intervene [#100] is DENIED.

IT IS SO ORDERED.

February 26, 2016                                          /s/ Indira Talwani
                                                           United States District Judge